UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMMAD A. MAZED,<br><br>             Plaintiff,<br><br>     v.<br><br>JP MORGAN CHASE BANK, N.A. ET AL.<br><br>             Defendants. | CASE NO. SACV 11-814-JST (MGLx)<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION** |

1    Before the Court is Plaintiff Mohammed A. Mazed's request for a preliminary
2 injunction to enjoin the foreclosure sale of his home located at 17460 Bramble Court,
3 Yorba Linda, CA 92886 (the "Property").  On July 19, 2011, Plaintiff filed an Ex Parte
4 Application for Temporary Restraining Order ("TRO") to enjoin the foreclosure sale of his
5 home.  (Pl.'s Appl. for TRO at 1, Doc. 16.)  Defendants JP Morgan Chase Bank, N.A.
6 ("Chase") and California Reconveyance Company ("CRC") (collectively, "Defendants")
7 filed an Opposition on July 20, 2011.  (Opp'n, Doc. 17.)  On July 21, 2011, the Court
8 granted Plaintiff's Ex Parte Application for TRO and issued an order for Defendants to
9 show cause why the Court should not issue a preliminary injunction.  (Order Granting
10 TRO, Doc. 19.)  The Court set a preliminary injunction hearing for August 22, 2011, at
11 10:00 a.m., and ordered Defendants to submit any written response to the order to show
12 cause no later than August 1, 2011, and Plaintiff to submit any reply by August 8, 2011.
13 (*Id*. at 2.)  Defendants did not file any response with the Court.  Plaintiff filed a reply to
14 Defendants' July 20 opposition on August 8, 2011.  (Reply, Doc. 20.)  The Court held oral
15 argument on August 22, 2011.
16    For the reasons set forth below, the Court (1) GRANTS Plaintiff's request for a
17 preliminary injunction barring Defendants from proceeding with a foreclosure sale of the
18 Property, and (2) ORDERS Plaintiff to pay monthly rent in the amount of $2,016.50 for
19 the duration of the injunction.
20 **I.    BACKGROUND**
21    Plaintiff purchased his home with a mortgage loan from Washington Mutual
22 ("WaMu") in December of 2002.  (Mem. in Supp. of Pl.'s Appl. ("Mem.") at 1-2, Doc. 16-
23 1.)  In June 2006, WaMu's agent, Lee Sweere, offered Plaintiff a Negatively Amortized-
24 Adjustable Rate Mortgage ("New Mortgage Loan").  (*Id*. at 2.)  Ms. Sweere assured
25 Plaintiff that he would be able to convert the New Mortgage Loan into a fixed rate
26 mortgage loan, and that she would make certain the loan application met with WaMu's
27 guidelines for the New Mortgage Loan and a second mortgage Home Equity Line of Credit
28

1  ("HELOC"). (*Id.*) WaMu approved both the New Mortgage Loan (for $980,000) and the
2  HELOC (originally $300,000 and reduced to $200,000). (*Id.*)
3      On August 28, 2006, WaMu recorded a Deed of Trust for the New Mortgage Loan
4  with the Orange County Recorder's Office, naming WaMu as the lender and beneficiary
5  and CRC as trustee. (Def.'s Req. for Judicial Notice ("RJN"), Ex. 1, Doc. 18.)[1]
6  Thereafter, WaMu transferred its interest in the New Mortgage Loan to the WaMu
7  Mortgage Pass-Through Certificates Series 2006-AR13 Trust (the "Trust") pursuant to a
8  Pooling and Service Agreement, which named WaMu as servicer, LaSalle Bank N.A. as
9  trustee, and Christiana Bank & Trust Company as Delaware trustee. (Compl. ¶ 66, Doc. 1;
10 Posey Decl., Ex. K, Doc. 20-1.) Plaintiff contends that WaMu retained no beneficial
11 interest in the loan after it was transferred to the Trust. (Compl. ¶ 66.)
12     On September 25, 2008, the Office of Thrift Supervision closed WaMu and
13 appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver. On that same
14 date, Chase entered into a Purchase and Assumption Agreement with the FDIC to assume
15 certain assets and liabilities of WaMu. (RJN, Ex. 3.) Chase contends that this transfer of
16 assets included a beneficial interest in the New Mortgage Loan. (Opp'n at 2.) On August
17 12, 2010, Chase recorded an Assignment of Deed of Trust naming Bank of America, N.A.
18 as successor trustee for the Trust and assigning to it all beneficial interest in the Deed of
19 Trust for the New Mortgage Loan. (RJN, Ex. 4; Opp'n at 2.)

---

[1] Defendants filed a request for judicial notice in support of their opposition to Plaintiff's ex parte application, asking the Court to take notice of: (i) the Deed of Trust recorded on August 28, 2006, which secured the New Mortgage Loan; (ii) the Deed of Trust recorded on August 28, 2006, which secured the HELOC; (iii) the Purchase and Assumption Agreement between the FDIC and Chase dated September 25, 2008; (iv) the Assignment of Deed of Trust in favor of Bank of America, recorded on August 12, 2010; and (v) the Notice of Default and Election to Sell filed with respect to the Property on March 4, 2011. Defendants' request is GRANTED, as the contents of these documents are "not subject to reasonable dispute" in that they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

Plaintiff experienced financial difficulty and, in April 2009, submitted loan modification applications to Chase, which were denied. (Mem. at 4.) Plaintiff re-applied for loan modification in November 2009. (*Id.*) Plaintiff remained current with his mortgage loan payments as he submitted these applications. (*Id.*) In December 2009, Chase informed Plaintiff that he would not qualify for a loan modification until he was delinquent in his mortgage payments for at least two months. (*Id.*) Plaintiff then skipped payments in January and February 2010 and obtained a Trial Loan Modification in March 2010. (*Id.*)

Chase's representative, Cornelius Smith, told Plaintiff that the Trial Loan Modification would be transformed into a permanent mortgage loan when Plaintiff made three successful payments. (Compl. ¶ 31.) Plaintiff made five sequential monthly payments to Chase under the trial modification and delivered the necessary documentation to receive a permanent loan modification, but Chase allegedly misapplied the payments and simultaneously pursued foreclosure. (*Id.* ¶¶ 31, 33.) Chase denied Plaintiff's permanent loan modification in September 2010. (*Id.* ¶ 33.)

On March 4, 2011, CRC recorded a Notice of Default and Election to Sell Under Deed of Trust for the New Mortgage Loan. (RJN, Ex. 5.) Plaintiff received a Notice of Trustee's Sale in June 2011. (Mazed Decl. ¶ 2, Doc. 16-2.)

## II.  LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 676 (2008) (internal quotations marks omitted). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). A district court should issue a preliminary injunction only "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). This requires the district court to make findings of fact and conclusions of law. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1157 (9th Cir. 2007).

1  "[T]he party seeking the injunction . . . bear[s] the burden of demonstrating the
2  various factors justifying preliminary injunctive relief . . . ." *Granny Good Foods, Inc. v.*
3  *Bhd. of Teamsters*, 415 U.S. 423, 441 (1974).  To succeed on an application for a
4  preliminary injunction, a plaintiff must establish (1) a likelihood of success on the merits;
5  (2) a likelihood of irreparable harm; (3) the balance of equities tips in his favor; and (4) an
6  injunction is in the public interest. *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th
7  Cir. 2009) (citing *Winter*, 555 U.S. at 20).  A plaintiff is required "to make a showing on
8  all four prongs." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir.
9  2011).  The Ninth Circuit employs the "serious questions" version of the "sliding scale"
10 approach when applying the four-element *Winter* test.  *Id.* at 1134.  "That is, 'serious
11 questions going to the merits' and a balance of hardships that tips sharply towards the
12 plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also
13 shows that there is a likelihood of irreparable injury and that the injunction is in the public
14 interest." *Id.* at 1135.
15
16 **III.    DISCUSSION**
17        A.    <u>Likelihood of Success on the Merits</u>
18        At least three theories of relief advanced in Plaintiff's Complaint and set forth in his
19 application for ex parte relief raise serious questions going to the merits of his claims that,
20 when considered in light of the sliding-scale approach, justify the entry of a preliminary
21 injunction.
22        *First*, Plaintiff alleges Defendants do not own any security interest in his New
23 Mortgage Loan and, as a result, are not entitled to foreclose on the Property.  (Mem. at 5.)
24 Specifically, he asserts that WaMu sold its beneficial interest in the New Mortgage Loan to
25 the Trust in 2006 and, therefore, Chase did not acquire any interest in the New Mortgage
26 Loan when it succeeded to WaMu's assets on September 25, 2008.  (Compl. ¶¶ 23-26;
27 Mem. at 11; Posey Decl., Ex. K.)
28

1      Defendants have presented to the Court (i) the Deed of Trust securing the New
2 Mortgage Loan, which identifies WaMu as lender and beneficiary, and CRC as trustee
3 (RJN, Ex. 1); (ii) the Purchase and Assumption Agreement between the FDIC and Chase
4 (*id.*, Ex. 3); and (iii) a 2010 Deed of Trust assigning Chase's interest in the New Mortgage
5 Loan to Bank of America as trustee for the Trust (*id.*, Ex. 4).  These documents, however,
6 fail to identify which entities assumed an interest in the New Mortgage Loan when it was
7 initially transferred to the Trust.  If, as Plaintiff asserts, WaMu transferred its interest to the
8 Trust in 2006, the New Mortgage Loan would not have been part of WaMu's assets
9 assumed by Chase under the Purchase and Assumption Agreement.  Accordingly, the
10 evidence before the Court fails to establish whether Chase acquired any interest in the New
11 Mortgage Loan when it assumed certain assets from WaMu in 2008, and whether CRC
12 remained trustee of the New Mortgage Loan when it recorded a Notice of Default in 2011.
13 Serious questions therefore remain as to the interests Chase and CRC hold in the New
14 Mortgage Loan.
15      *Second*, Plaintiff claims that Chase engaged in acts of fraud and misrepresentation
16 by inducing Plaintiff to participate in the Trial Mortgage Loan Modification program.
17 (Mem. at 19-20.)  In response, Chase argues that Plaintiff cannot state a claim against it in
18 connection with the New Mortgage Loan because Chase did not assume liability for
19 borrower claims related to loans or commitments to lend made by WaMu.  (Opp'n at 4.)
20 Rather, Chase argues, pursuant to the terms of the Purchase and Assumption Agreement,
21 the FDIC retained liability for any borrower claims relating to WaMu's loans and lending
22 activity.  (*Id*. at 5.)
23      Chase's reliance on its limited assumption of liability under the Purchase and
24 Assumption Agreement is misplaced.  While the Purchase and Assumption Agreement
25 insulates Chase from liability arising from *WaMu's* actions or practices in the origination
26 of the loan (*see, e.g.*, *Ansanelli v. JP Morgan Chase Bank, N.A.*, No. C 10-03892, 2011
27 WL 1134451, at *2-3 (N.D. Cal. Mar. 28, 2011) ("Chase is not responsible for any liability
28 of *WaMu* related to loans made by WaMu prior to September 25, 2008 . . . ."); *Roberts v.*

1  *JP Morgan Chase Bank, N.A.*, Nos. 09-CV-01855-LHK, 09-CV-01879, 2011 WL 864949, at *2-3 (N.D. Cal. Mar. 11, 2011) (same)), Chase "*is* responsible for its *own* liability related to such loans." *Anaselli*, 2011 WL 1134451 at *3.  Accordingly, while there are no serious questions going to the merits of Plaintiff's claims as they relate to WaMu's actions vis-à-vis the New Mortgage Loan, there are serious questions going to the merits of Plaintiff's claims relating to Chase's actions taken with regard to the Trial Mortgage Loan Modification program and its purported wrongful foreclosure of the Property.

*Third*, Plaintiff contends that Defendants violated California Civil Code § 2923.5 by failing to contact him "in person or by telephone in order to assess . . . [his] financial situation and explore options for . . . [him] to avoid foreclosure," or to otherwise discharge their duty of due diligence thirty days prior to filing the Notice of Default.  Cal. Civ. Code § 2923.5(2) (2011); (Mem. at 14-15.)  Defendants point to the declaration of compliance attached to the Notice of Default as evidence of their compliance with Section 2923.5. (Opp'n at 8-9; RJN, Ex. 5.)  Plaintiff asserts, however, that the facts set forth in the declaration are false.  (Mem. at 15; Compl. ¶¶ 42-45.)  This too raises serious questions going to the merits of Plaintiff's claims.  *See Sacchi v. Mortg. Registration Sys., Inc.*, No. CV 11-1658 AHM (CWx), 2011 WL 2533029, at *9 (C.D. Cal. June 24, 2011) (fact that declaration complied with Section 2923.5 not fatal to plaintiff's claims because plaintiff alleged declaration was false); *Javaheri v. JPMorgan Chase Bank, N.A.*, No. CV10-08185, 2011 WL 2173786, at *4-5 (C.D. Cal. June 2, 2011) (plaintiff stated claim for relief under California Civil Code § 2923.5 where he alleged declaration of compliance "misrepresented the facts").

B.  Likelihood of Irreparable Harm

"It is well-established that the loss of an interest in real property constitutes an irreparable injury."  *Park Village Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1159 (9th Cir. 2011).  Accordingly, "[t]he loss of one's home through foreclosure generally is considered sufficient to establish irreparable harm."  *Tamburri v. Suntrust Mortg., Inc.*, No. C-11-2899 EMC, 2011 WL 2654093, at *2 (N.D. Cal. July 6,

2011) (citations omitted); *see also Wrobel v. S.L. Pope & Assocs.*, No. 07CV1591, 2007 WL 2345036, at *1 (S.D. Cal Aug. 15, 2007) ("Losing one's home through foreclosure is an irreparable injury.").

Here, it is undisputed that Defendants recorded a Notice of Default and initiated a trustee's sale of the Property. Plaintiff has, therefore, shown a likelihood of irreparable injury by the potential loss of his home through a foreclosure sale.

### C. Balance of Hardships

The balance of hardships clearly tips in favor of Plaintiff, as he has shown a likelihood of irreparable injury by the potential loss of his home through a foreclosure sale. In contrast, the only injury Defendants face from a preliminary injunction is a delay in collecting on their investment, which does not constitute an irreparable injury. *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) ("Purely monetary injuries are not normally considered irreparable.").

### D. Public Interest

"Numerous courts have indicated that it is in the public interest to allow homeowners an opportunity to pursue what appear to be valid claims before being displaced from their homes." *Tamburri v. Suntrust Mortg., Inc.*, No. C-11-2899 EMC, 2011 WL 2654093, at *5 (N.D. Cal. July 6, 2011) (internal citations and quotation marks omitted) (collecting cases). Here, the Court concludes that a preliminary injunction is in the public interest because there are serious questions going to the merits of Plaintiff's claims and the public is served by protecting against potentially unlawful foreclosures.

Because (1) Plaintiff raised serious questions going to the merits of his claims against Defendants, (2) the balance of hardship "tips sharply" in favor of Plaintiff, and (3) issuing a preliminary injunction in this instance benefits the public interest, the Court GRANTS Plaintiff's request for a preliminary injunction enjoining the foreclosure sale of the Property.

IV.     BOND

Under Federal Rule of Civil Procedure 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (internal quotation marks omitted).

Defendants request that the Court require Plaintiff to post a bond in the amount of $60,253.60 to cover expected attorneys' fees for a six-month period along with monthly rent, or to pay monthly rent in the amount of $5,875.60 for the duration of the injunction. (Opp'n at 26; Ahn Decl. ¶¶ 2-5.) Plaintiff asserts that no bond should be required because Chase has fraudulently collected and converted his loan payments since 2008. (Reply at 25.)

The Court is not persuaded by Plaintiff's argument because, while the Court has determined that serious questions going to the merits of Plaintiff's claims support temporarily enjoining the sale of his home, it has not determined that Defendants have fraudulently collected or converted his mortgage payments or that Plaintiff ultimately is likely to succeed on the merits. Nor is the Court persuaded by Defendants' claim that Plaintiff should be required to post a bond to cover the total cost of Defendants' attorneys' fees for six months of anticipated discovery.

In light of its determination that there are serious questions going to the merits of Plaintiff's claims, but that Plaintiff has not yet shown a likelihood of ultimate success, the Court deems it appropriate to require Plaintiff to pay monthly rent on the Property. Plaintiff's Complaint alleges his monthly mortgage payment under the Trial Loan Modification program was $2,016.50. (Compl., Ex. 5.) Accordingly, the Court orders Plaintiff to pay monthly rent in the amount of $2,016.50 for the duration of the injunction.

If Plaintiff fails to make a monthly payment, Defendants may immediately apply to the Court for dissolution of the preliminary injunction.

## V. CONCLUSION

For the foregoing reasons, the Court:

    (1) GRANTS Plaintiff's Application for a preliminary injunction.

    (2) ORDERS Plaintiff to pay monthly rent in the amount of $2,016.50 for the duration of the injunction.

    (3) ORDERS the parties to participate in Loan Modification Settlement Proceedings in the manner set forth in the Court's concurrently issued Loan Modification Order.

DATED: August 23, 2011

_____
JOSEPHINE STATON TUCKER
UNITED STATES DISTRICT JUDGE