O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| MOHAMMAD A. MAZED, | CASE NO. SACV 11-814-JLS (ANx) |
|---|---|
| Plaintiff, | **ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 115); (2) GRANTING DEFENDANTS' MOTION TO STRIKE (Doc. 119); (3) DENYING PLAINTIFF'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 121); (4) DENYING PLAINTIFF'S EX PARTE APPLICATION (Doc. 143)** |
| vs. | |
| JP MORGAN CHASE BANK, N.A., et al. | |
| Defendants. | |

## I. INTRODUCTION

The following matters are before the Court: (1) Defendants JP Morgan Chase Bank, N.A. and California Reconveyance Company's Motion for Summary Judgment (Defs. MSJ, Doc. 115; Pl. MSJ Opp'n, Doc. 128; Defs. MSJ Reply, Doc. 140); (2) Defendants' Motion to Strike (Def. MTS, Doc. 119; Pl. MTS Opp'n, Doc. 130; Defs. MTS Reply, Doc. 141); (3) Plaintiff Mohammad A. Mazed's Amended Motion for Partial Summary Judgment (Pl. MPSJ, Doc. 121; Defs. MPSJ Opp'n, Doc. 134; Pl. MPSJ Reply, Doc. 139); and (4) Plaintiff's Ex Parte Application to Strike Mullen Declaration (Pl. App., Doc. 143; Defs. App. Opp'n, Doc. 144.)

Having considered the parties' briefing and admissible evidence, and having taken the matter under submission, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion for Summary Judgment; GRANTS Defendants' Motion to Strike; DENIES Plaintiffs' Amended Motion for Partial Summary Judgment; and DENIES Plaintiff's Ex Parte Application. Summary judgment is granted in favor of Defendants on Plaintiff's claims for wrongful foreclosure, declaratory relief, unjust enrichment, violation of California Civil Code section 2923.5, and violation of California Civil Code section 1572/fraud.

## II. BACKGROUND

Plaintiff purchased property located at 17460 Bramble Court, Yorba Linda, California with a mortgage loan from Washington Mutual Bank in December of 2002. (Second Am. Compl. ("SAC") ¶¶ 1, 66-67, Doc. 73.) Plaintiff brings claims related to the attempted foreclosure of the property and his efforts to obtain a loan modification. Following several motions to dismiss, Plaintiff's remaining claims are for: wrongful foreclosure, declaratory relief, unjust enrichment, violation of California Civil Code section 2923.5, violation of California Civil Code

section 1572/fraud, breach of written agreement, breach of the implied covenant of good faith and fair dealing, violation of the Real Estate Settlement Procedures Act ("RESPA"), promissory estoppel, and violation of California Business & Professions Code section 17200.  (*See* MTD Order, Doc. 57; FAC MTD Order, Doc. 72; SAC MTD Order, Doc. 85.)  Defendants move for summary judgment on all of Plaintiff's remaining claims; Plaintiff moves for summary judgment on his claims for unjust enrichment and promissory estoppel.

### III.   LEGAL STANDARD

In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and an issue is "material" when its resolution might affect the outcome of the suit under the governing law.  *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  However, "[t]he moving party . . . has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial.  The moving party need only point out to the [c]ourt that there is an absence of evidence to support the non-moving party's case."  *Sluimer v. Verity, Inc.*, 606 F.3d 584, 586 (9th Cir. 2010).  "Rule 56[(a)] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of

1 proof at trial." *Celotex Corp.*, 477 U.S. at 322. Therefore, if the non-movant does
2 not make a sufficient showing to establish the elements of its claims, the Court must
3 grant the motion. *See In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir.
4 2010) ("non-moving party must come forth with evidence from which a jury could
5 reasonably render a verdict in the non-moving party's favor").

7 **IV. DISCUSSION**
8       The Court first addresses objections, requests to strike, and related issues,
9 before turning to the merits of Plaintiff's claims.

11       **A.    Defendants' Motion to Strike Plaintiff's Expert Disclosures**
12       Defendants move to strike the following expert disclosures submitted by
13 Plaintiff: (1) two reports by Thomas Winter, submitted on January 11, 2014; (2) a
14 report by Laurie Hoeltzel, submitted on January 22, 2014; and (3) a report by Adrian
15 Throup, submitted on January 25, 2014. (*See* Defs. MTS at 2; Taline Gulesserian
16 Decl. ¶¶ 4-6, Exs. B-D, Doc. 120.)
17       Pursuant to the Court's Scheduling Order, fact and expert discovery closed on
18 February 7, 2014, and expert witness disclosures pursuant to Federal Rule of Civil
19 Procedure 26(a)(2) were due seventy days prior, on November 29, 2013. (Doc. 80.)
20 Thus, Plaintiff's January 2014 disclosures are untimely.
21       Federal Rule of Civil Procedure 37(c)(1) forbids the use at trial of any
22 information required to be disclosed under Rule 26(a) that is not properly disclosed.
23 Improperly disclosed reports may be excluded as a sanction, unless the party
24 demonstrates its failure to comply with Rule 26(a) is substantially justified or
25 harmless. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106
26 (9th Cir. 2001). Plaintiff argues he was substantially justified in his late disclosures
27 because Defendants did not timely produce all of the documents needed to perform

4

expert analysis. (Pl. MTS Opp'n at 1-3.) However, the only document Plaintiff actually identifies in his opposition—Chase's purchase agreement with the FDIC—is publicly available and has been on the docket in this case since at least June 2011. (*See* Pl. MTS Opp'n at 3; Defs. June 2011 RJN, Doc. 10 Ex. 3; *see also* Nov. 2012 MTD Order at 2.) Indeed, Plaintiff's reports largely appear to be based on information that was either (1) already in Plaintiff's possession; (2) copied from his Second Amended Complaint; (3) publicly available; or (4) provided in discovery responses served prior to the cut-off date for expert disclosures. In any event, the Court has already found the parties did not use the time allotted for discovery with sufficient diligence. (Doc. 106.) Thus, Plaintiff has not demonstrated that his late expert disclosures were substantially justified.

Nor has Plaintiff shown the delay was harmless. Plaintiff's disclosures, comprising four reports by three different witnesses, were made only weeks before the discovery cut-off date. As a result, Defendants had no opportunity to counter-designate rebuttal experts, nor did they have a meaningful opportunity to depose Plaintiff's witnesses. Therefore, allowing Plaintiff to use the untimely reports would not be harmless.

Accordingly, Defendants' Motion to Strike is GRANTED, and the untimely disclosures of Thomas Winter, Laurie Hoeltzel, and Adrian Throup are STRICKEN.

**B.     Plaintiff's Requests to Strike and Objections to Mullen Declaration and Documents Attached Thereto**

Defendants provided identical declarations from Karie Mullen, an "Assistant Secretary" at Chase, in their Motion for Summary Judgment and in their opposition to Plaintiff's Amended Motion for Partial Summary Judgment. (Docs. 117; 136.) The declarations state that Mullen is authorized to make the declaration on behalf of Chase, and that her duties at Chase include monitoring and reviewing documents

related to loans involved in litigation. (Mullen Decl. ¶¶ 1-3, Doc. 117.) She further states that Chase has possession, custody and control of the business records that were maintained by WaMu and are related to Plaintiff's loan. (*Id*. ¶¶ 5-6.)

Plaintiff objected to the declarations and the exhibits attached thereto in his briefing and Statement of Genuine Issues. (*See* Pl. MSJ Opp'n at 25; Pl. MPSJ Reply at 8-18; Pl. SGI, Doc. 129.) Plaintiff's Reply to his Motion also requested the Court strike the Mullen declaration included in Defendants' opposition to his Motion. (Pl. MPSJ Reply at 8-18.) After briefing on the cross-motions was completed, Plaintiff filed an ex parte application to strike the identical Mullen declaration included in Defendant's own Motion, which was filed over a month earlier. (*Compare* Pl. App. at 1-10 *with* Pl. MPSJ Reply at 8-18.) The Court finds any arguments raised for the first time in the ex parte application are untimely, and accordingly will not be considered.[1]

The Court relies upon the Mullen declaration as to (1) undisputed statements; (2) undisputed parts of partially disputed statements; and (3) the dates, parties, and legally operative language of the October 25, 2005 Loan Purchase and Sale Agreement, the September 27, 2006 Pooling and Servicing Agreement, the September 25, 2008 Purchase and Assumption Agreement, and the adjustable-rate note related to Plaintiff's loan. (Mullen Decl. Exs. 1-4.) The Court finds that Plaintiff's objections to these documents do not raise any reasonable dispute as to their authenticity. (*See* Pl. SGI ¶¶ 3, 5, 13; Pl. App. at 2-10; *see also* Gulesserian Decl. ¶ 7, Doc. 137.) The Court also overrules Plaintiff's hearsay objections to

---

[1] In particular, Plaintiff argues for the first time in his Application that Mullen was not disclosed on any witness list. (Pl. App. at 9.) Even if the Court were to consider this argument, the late disclosure would be harmless in light of the Court's limited reliance on the declaration.

6

these documents, as the Court relies on them solely for their independent legal significance. *See United States v. Rubier*, 651 F.2d 628, 630 (9th Cir. 1981).

Accordingly, to the extent the Court relies on the Mullen declaration and the exhibits attached thereto, Plaintiff's objections are overruled and his requests to strike are denied.

### C. Conclusions of Law in Plaintiff's Statement of Genuine Issues

Plaintiff's Statement of Genuine Issues improperly includes approximately 160 pages of legal argument characterized as "conclusions of law." (Pl. SGI at 32-192.)[2] The "conclusions of law" address claims and include arguments and cases that are not mentioned anywhere in Plaintiff's Opposition. In effect, Plaintiff impermissibly attempts to exceed the page limits on briefing by a wide margin. Accordingly, the "conclusions of law" in Plaintiff's Statement of Genuine Issues are STRICKEN.

### D. Wrongful Foreclosure, Declaratory Judgment and Unjust Enrichment Claims

Plaintiff's claims for wrongful foreclosure, declaratory judgment, and unjust enrichment are all premised on the allegation that Defendants do not own any security interest in the loan, and therefore cannot foreclose or collect payments. (Second Am. Compl. ("SAC") ¶¶ 501-32; SAC MTD Order at 5-6.) The Court finds that there is no genuine issue of material fact as to Chase's authority to initiate foreclosure proceedings and collect loan payments.

---

[2] Plaintiff filed separate conclusions of law in support of his own Motion for Partial Summary Judgment. (Doc. 121-3.)

Plaintiff obtained a $980,000 residential loan in August 2006, secured by a Deed of Trust encumbering real property located at 17460 Bramble Court, Yorba Linda, California. (Pl. SGI ¶ 1.) The Deed of Trust identifies Washington Mutual Bank ("WaMu") as the lender, and Plaintiff as the borrower. (*Id*. ¶ 2.)

Pursuant to an October 25, 2005 Mortgage Loan Purchase and Sale Agreement between WaMu and WaMu Asset Acceptance Corporation ("WMAAC"), Plaintiff's loan was transferred from WaMu to WMAAC on the closing date of the loan. (Mullen Decl. Ex. 1.)[3]

On September 27, 2006, WMAAC as depositor, WaMu as servicer, LaSalle Bank, N.A. as trustee, and Christiana Bank & Trust Company as Delaware Trustee, entered into a Pooling and Servicing Agreement for WaMu Mortgage Pass-Through Certificate Series 2006-AR13 Trust ("2006-AR13 Trust"). (Mullen Decl. Ex. 2.) Pursuant to the terms of the agreement, ownership of the loan was transferred to the 2006-AR13 Trust, and WaMu became the servicer of the loan. (*Id*.) The agreement authorized WaMu, as servicer, to initiate foreclosure proceedings and collect payments due under the terms of the loan. (*Id*. §§ 3.01, 3.09.)

In September 2008, the Office of Thrift Supervision closed WaMu and appointed the FDIC as receiver. (Pl. SGI ¶¶ 7, 8.) The FDIC, in its capacity as the

---

[3] Plaintiff notes the Purchase and Sale Agreement does not specifically list Plaintiff's loan. (Pl. SGI ¶ 3.) Even if the agreement did not transfer WaMu's interest in the loan to WMAAC, the Court does not find this creates a genuine dispute of material fact as to Chase's standing. In July 2010, Chase, as successor in interest to WaMu, recorded an assignment transferring all beneficial interest in the loan to the 2006-AR13 Trust. (Defs. RJN Ex. D, Doc. 118; *see also* SAC MTD Order at 2 n.1.) On July 5, 2013, Chase executed a Power of Attorney with the trust that authorized Chase to collect payments and foreclose on the property. (Gulesserian Decl. Ex. B ¶ 1, Sched. A (listing WAMU 2006-AR13 Trust).) Thus, regardless of whether the beneficial interest in the loan was transferred to the trust by the recorded assignment or the Pooling and Servicing Agreement, Chase has authority to collect payments and initiate foreclosure proceedings.

Receiver of WaMu, executed a Purchase and Assumption Agreement with Chase on September 25, 2008. (Mullen Decl. Ex. 3.) According to the agreement, Chase "specifically purchase[d] all mortgage servicing rights and obligations" of WaMu. (*Id.* §§ 2.1, 3.1.)

Together, these documents establish there is no genuine dispute of material fact as to whether Chase is authorized to initiate foreclosure proceedings and collect payments due under the terms of the loan. *See Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 271-72 (2011) (valid assignment of interest may be shown "in any manner"); Cal. Civ. Code § 2924(a)(1) ("trustee, mortgagee, beneficiary, or any of their authorized agents" may initiate non-judicial foreclosure).[4]

Accordingly, Defendants' Motion for Summary Judgment is granted as to Plaintiff's claims for wrongful foreclosure, declaratory relief, and unjust enrichment.

### E. Violation of Cal. Civil Code section 2923.5 Claim

"[California] Civil Code section 2923.5 requires, before a notice of default may be filed, that a lender contact the borrower in person or by phone to 'assess' the borrower's financial situation and 'explore' options to prevent foreclosure." *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 213-14 (2010); Cal. Civ. Code § 2923.5. An "assessment" merely requires inquiring as to why payments cannot be made, and an "exploration" is limited to telling the borrower the traditional ways that foreclosure can be avoided. *Mabry*, 185 Cal. App 4th at 224, 232 (emphasis in

---

[4] Chase has also demonstrated that it holds the note related to Plaintiff's loan. (Pl. SGI ¶ 13; Mullen Decl. Ex. 4; *see also* Posey Decl. Ex R, Doc. 128-19.) Although possession of the note is not required to initiate foreclosure proceedings, as the holder of the note Chase would be a "person entitled to enforce" it. Cal. Commercial Code § 3301; *Fontenot*, 198 Cal. App. 4th at 272.

original). The only remedy for a violation of section 2923.5 is to postpone foreclosure until there has been compliance with the statute. *Id*. at 223, 235.

It is undisputed that Plaintiff and Chase have had discussions over the course of several years regarding loan modification. (Pl. SGI ¶¶ 14-20.) In addition, over two years ago, the Court granted a preliminary injunction barring Defendants from proceeding with a foreclosure sale. (Doc. 26.)[5] Thereafter, the Court ordered the parties to participate in a loan modification settlement conference, and in August 2012 the parties reported to the Court that they could "not agree to a loan modification" at that time. (Docs. 51, 52.) The parties have clearly and indisputably had many opportunities to communicate about foreclosure options, far beyond what is required by section 2923.5.

Accordingly, Defendants' Motion for Summary Judgment is granted as to this claim.

### F. RESPA Claim

Section 2605 of RESPA sets forth the duty of a "loan servicer" to respond to qualified written requests by borrowers regarding the servicing of the borrower's loan. *See* 12 U.S.C. § 2605(e). Under the statute, a borrower is entitled to "actual damages" resulting from a lender's failure to comply with RESPA. *Id*. § 2605(f)(1)(A). The statute also provides for statutory damages, in an amount not to exceed $2,000, if there is "a pattern or practice of noncompliance." *Id*. § 2605(f)(1)(B). A borrower that prevails on a RESPA claim may also obtain costs and reasonable attorney's fees incurred in connection with the action. *Id.* § 2605(f)(3).

---

[5] Plaintiff appealed the grant of his request for a preliminary injunction on the ground that it required him to pay monthly rent; the Ninth Circuit Court of Appeals affirmed the Court's Order. (Doc. 41.)

On May 25, 2010, Plaintiff sent a letter purporting to be a qualified written request under RESPA, and Chase responded on June 28, 2010. (Pl. SGI ¶ 25, 26.) Between November 2010 and May 2011, Plaintiff sent seven additional letters purporting to be qualified written requests. (*Id.* ¶¶ 27-28, 30-34, Mullen Decl. Exs. 15-16, 18-22; Posey Decl. Ex. E.) Unlike the May 2010 letter, the seven subsequent letters requested an accounting of certain payments Plaintiff made under his Trial Payment Plan (discussed in below Sections IV.H-J), which Plaintiff claimed were unaccounted for and had resulted in an inaccurate default amount being listed on a November 2010 pre-foreclosure demand letter.[6] (Mullen Decl. Exs. 15-16, 18-22; Posey Decl. Ex. E.) Chase claims to have responded to only one of the seven subsequent letters; the response, dated December 22, 2010, simply stated Chase's belief that it had no further obligation to respond to Plaintiff. (Pl. SGI ¶ 29; Mullen Decl. Ex. 17.) Plaintiff disputes receiving the response, which was not sent to the mailing address he provided in his letters. (Pl. SGI ¶¶ 26, 29; Mullen Decl. Ex. 17; Posey Decl. Exs. E, Y, Z.)

Defendants argue, and the Court agrees, that Plaintiff has provided no evidence of actual damages resulting from the alleged RESPA violations.[7] (Defs. MSJ at 18.) However, the Court finds a genuine dispute of material fact exists as to whether there was a pattern or practice of noncompliance by Chase, based on its

---

[6] The letters also dispute the validity of the loan, allege fraud, and threaten to sue Chase. No response was required under RESPA to these particular aspects of the letters. *See Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666-68 (9th Cir. 2012).

[7] Plaintiff claims he would have paid off the default amount if Chase responded to his letters. (Pl. MSJ Opp'n at 3.) Plaintiff's unilateral decision to withhold payments that could have prevented a default is not a basis for actual damages under RESPA.

purported failure to respond to the seven subsequent letters.[8] (SAC ¶¶ 537-43; Pl. MSJ Opp'n at 2-3; Pl. MPSJ at 2); *cf. Ploog v. HomeSide Lending, Inc.*, 209 F. Supp. 2d 863, 868-69 (N.D. Ill. 2002) (five instances of borrower sending qualified written requests without a response sufficient to allege pattern or practice).

Defendants also argue that summary judgment should be granted on this claim because none of Plaintiff's letters were sent to Defendant's designated address for qualified written requests. (Defs. MSJ at 16-17.) Under 24 C.F.R. § 3500.21(e)(1), "a servicer may establish a separate and exclusive office and address for the receipt and handling of qualified written requests" by "notice either included in the Notice of Transfer[9] or separately delivered by first-class mail, postage prepaid." Although Defendants claim Plaintiff's letters were not sent to Chase's designated address, Defendants provide no evidence that Plaintiff had notice of that address. (Defs. MSJ at 16-17); 24 C.F.R. § 3500.21(e)(1); *compare Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146-49 (10th Cir. 2013) (holding that, where borrower had notice of designated address, letters not sent to designated address were not Qualified Written Requests).[10] Indeed, a Chase representative apparently directed Plaintiff to send correspondence to an address *other* than the purported designated address. (Posey Decl. Ex. Z at 35:6-8, 36:16, 18-19.)

Accordingly, Defendants' Motion for Summary Judgment is denied as to this claim.

---

[8] Defendants do not address this issue directly, but argue the seven subsequent letters were duplicative of the May 2010 letter. (*See* Defs. MSJ at 3-4.) The Court rejects this argument for the reasons stated above.

[9] A "Notice of Transfer" must be sent to the borrower upon transfer of the loan; the regulation sets forth specific requirements as to the contents of the notice. *Id.* § 3500.21(d).

[10] Nor does the Mullen declaration provide a proper foundation for the claimed designated address. (Mullen Decl. ¶ 15.)

**G.     Violation of Cal. Civil Code § 1572/Fraud Claim**

"The elements of intentional misrepresentation, or actual fraud, are: (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage." *Anderson v. Deloitte & Touche LLP*, 56 Cal. App. 4th 1468, 1474 (1997) (quotation marks omitted). "[T]he intent element of promissory fraud entails more than proof of an unkept promise or mere failure of performance." *Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*, 55 Cal. 4th 1169, 1183 (2013). "[I]f plaintiff adduces no further evidence of fraudulent intent than proof of nonperformance of an oral promise, he will never reach a jury." *Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18, 31 (1985).

Plaintiff's claim for fraud is premised on (1) a representative of Chase, Cornelius Smith, telling Plaintiff over the phone that he would be able to obtain a permanent loan modification after three consecutive trial payments; (2) Plaintiff making the payments; and (3) Chase failing to offer a permanent loan modification. (SAC ¶ 549; Posey Decl. Ex Y at 181:14-25; SAC MTD Order at 6-7.)[11]

Plaintiff has provided no evidence of fraudulent intent; at best, there is evidence of non-performance. Accordingly, Defendants' Motion for Summary Judgment is granted as to this claim.

---

[11] Plaintiff's fraud claim is limited to those aspects of the claim that were not dismissed from Plaintiff's Second Amended Complaint. (*See* MTD SAC Order at 7.)

### H. Breach of Written Agreement and Breach of Implied Covenant of Good Faith and Fair Dealing Claims

"The standard elements of a claim for breach of contract are (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom." *Abdelhamid v. Fire Ins. Exch.*, 182 Cal. App. 4th 990, 999 (2010) (internal quotation marks omitted). "The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract." *Smith v. City and County of San Francisco*, 225 Cal. App. 3d 38, 49 (1990). The "implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract." *Pasadena Live, LLC v. City of Pasadena*, 114 Cal. App. 4th 1089, 1094 (2004) (citation and emphasis omitted).

Plaintiff's claims for breach of written agreement and for breach of the implied covenant of good faith and fair dealing are based on Plaintiff's Trial Payment Plan and Chase's failure to grant him a permanent loan modification. (SAC MTD Order at 10; FAC MTD Order at 14-15; SAC Ex. 2 (Trial Payment Plan).)

The Trial Payment Plan is an enforceable contract. *See Corvello v. Wells Fargo Bank, N.A.*, 728 F.3d 878, 883 (9th Cir. 2013). It is undisputed that Chase did not offer Plaintiff a permanent loan modification, and both sides have provided evidence that Plaintiff made the required number of payments. (Pl. SGI ¶ 15; Mullen Decl. Ex. 12; Posey Decl. Exs. C, AD.) However, the parties dispute whether Plaintiff submitted all of the required documentation, which was Chase's stated basis for denying the application. (Pl. SGI ¶¶ 20-22.) Defendants provide letters Chase sent to Plaintiff claiming required documents had not been received;

14

Plaintiff provides evidence suggesting the documents had been sent. (*Id.*; Mullen Decl. Exs. 8-9; Posey Decl. Exs. S, Z at 105:6-12.) The Court finds that a genuine dispute of material fact remains as to whether Plaintiff fulfilled all of his obligations under the Trial Payment Plan. If Plaintiff fulfilled all of his obligations, Chase's failure to offer a permanent modification would constitute a breach of the Trial Payment Plan. *See Corvello*, 728 F.3d at 884; *West v. JPMorgan Chase Bank, N.A.*, 214 Cal. App. 4th 780, 789, 796-99 (2013).

Accordingly, Defendants' Motion for Summary Judgment is denied as to the claims for breach of written agreement and breach of the implied covenant of good faith and fair dealing.

### I. Promissory Estoppel Claim

"The elements of a promissory estoppel claim are (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Aceves v. U.S. Bank, N.A.*, 192 Cal. App. 4th 218, 225 (2011), *as modified* (Feb. 9, 2011) (quotations omitted, alteration in original). "[P]romissory estoppel is distinct from contract in that the promisee's justifiable and detrimental reliance on the promise is regarded as a substitute for the consideration required as an element of an enforceable contract." *Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.*, 211 Cal. App. 4th 230, 242 (2012) (emphases and internal citation omitted).

Plaintiff provides evidence that in March 2010, he was promised by a representative of Chase, Cornelius Smith, that if he made three trial payments he would receive a permanent loan modification. (Ex. Y, 181:14-25; Ex. Z 105:2-5; 110:23-25; Pl. MPSJ Reply at 2.) Plaintiff also provides evidence that he made the trial payments, (Posey Decl. Ex. AD), which the Court finds sufficient to establish

reliance and damages. However, the Court finds that a triable issue of fact remains as to whether Plaintiff's reliance on the oral representation by Mr. Smith was reasonable and foreseeable given the near-contemporaneous written Trial Payment Plan, which sets forth the terms and conditions for trial payments and a permanent loan modification. *Cf. Jolley v. Chase Home Finance, LLC*, 213 Cal. App. 4th 872, 897 (2013) (alleged reliance on "frequent reassurances" by Chase representative that loan modification was forthcoming created triable issue of fact).

Accordingly, Defendants' Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment are both denied as to this claim.

### J. California Business & Professions Code section 17200 Claim

Plaintiff's claim under California Business & Professions Code section 17200 is derivative of his fraud, section 2923.5 and RESPA claims. (SAC ¶¶ 612, 616; FAC MTD Order at 10-11.) As the Court has denied Defendants' Motion for Summary Judgment as to Plaintiff's RESPA claim, the Court denies the motion as to Plaintiff's section 17200 claim.

### K. Punitive Damages

Defendants' Motion for Summary Judgment asks the Court strike Plaintiff's request for punitive damages, which is based on his allegations of fraud. (Defs. MSJ at 24-25; SAC ¶ 586.) Plaintiff did not address this issue in his Opposition. As the Court grants summary judgment against Plaintiff on his claim for fraud, the Court STRIKES the request for punitive damages in paragraph 586 of the Second Amended Complaint.

## V. CONCLUSION

For the reasons stated above, Defendants' Motion to Strike is GRANTED. Plaintiff's Ex Parte Application is DENIED. Plaintiff's Motion for Partial Summary Judgment is DENIED. Defendants' Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART. Summary judgment is granted in favor of Defendants as to Plaintiff's claims for wrongful foreclosure, declaratory relief, unjust enrichment, violation of California Civil Code section 2923.5, and violation of California Civil Code section 1572/fraud. Defendants' Motion for Summary Judgment is DENIED as to Plaintiff's claims for breach of contract, breach of the covenant of good faith and fair dealing, promissory estoppel, violation of RESPA, and violation of California Civil Code section 17200.

**SO ORDERED**

DATE: April 7, 2014      _____JOSEPHINE L. STATON_____
JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE